IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHARONA PROPERTIES, L.L.C., *et al.*, ) | CASE NO. 1:13 CV 1740 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| ORANGE VILLAGE, OHIO, ) | |
| ) | |
| Defendant. ) | MEMORANDUM OPINION |
| ) | |

This action is before the Court on cross motions for Summary Judgment. Plaintiffs Sharona Investments, L.L.C., and Sharona Properties, L.L.C. (collectively "Plaintiffs"), and Defendant, Orange Village, Ohio, ("the Village") have filed motions for Summary Judgment, and combined opposition and reply briefs. (ECF # 15, 16, 18, 19, 21). The case centers around the constitutionality of the Village's ordinances regulating signs within the village limits. Plaintiffs contend that the ordinance prohibiting billboards and off-premise signs is unconstitutional both facially and as it was applied to them. The Village argues that Plaintiffs have no standing to challenge the ordinance, and that the ordinance is constitutional as written, and as applied in these circumstances.

## **FACTS**[1]

Plaintiff Sharona Investments, LLC is the titled owner of a piece of property located at 27049 Miles Road, within the municipal boundaries of Orange Village, Ohio.  ( ECF #16-4: Sonenstein Depo. at 7-8, 10).   Plaintiff Sharona Properties, LLC is the property manager and authorized representative of the owner.  (ECF #16-4: Sonenstein Depo. at 11).   Howard Sonenstein is the managing partner and primary owner of both Plaintiffs, and the decision maker regarding the use of the subject property.  (ECF #16-4: Sonenstein Depo. at 9-13).  The property is currently leased to a separate entity, which operates a garden center/landscaping business.  (ECF #16-4: Sonenstein Depo. at 46-47, 50).  The parties agree that there is already one freestanding sign at the entrance of the property.  (ECF #19 at 12).

At some point in 2012, Mr. Sonenstein decided to explore the possibility of erecting an electronic sign at the back of the property where it would be visible to motorists traveling on Route 422.  (ECF #16-4: Sonenstein Depo. at 80).  In May of 2012, Mr. Sonenstein, through his counsel, sent a letter to the Village indicating that he was interested in possibly "placing a billboard adjacent to Route 422 on the rear portion of his property."  (ECF #16-6, Ex. F).  The letter further indicated the Village ordinances appeared to be an obstacle to the erection of such a sign, but if the Village was interested in pursuing and arrangement with Mr. Sonenstein, they could make a deal "that would accommodate an attractive billboard and provide financial benefits to the Village at the same time."   (ECF #16-6, Ex. F).  The letter ended with a request that the "appropriate department head contact me to discuss the details, location, type of sign, and financial incentives that would be attached."  (ECF #16-6, Ex. F).

The Village responded in writing indicating that its ordinances do prohibit "the usage of billboards for off-premises sales."  While indicating the Village's support for these ordinances

---

[1]Except as otherwise noted, the factual summary is based solely upon the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint, and the deposition transcripts filed with the Court as part of the summary judgment motion briefing.  Those facts which are contested and have some support through deposition testimony, affidavit, or other evidence will be addressed in the "Discussion" section below and shall be construed in the light most favorable to the non-moving party as required under the Summary Judgment standards.

and its belief that the ordinances are constitutional, the Village invited Mr. Sonenstein to provide any information that would show a contrary conclusion, or to petition Council for a change in the law.  (ECF # 16-6, Ex. G).  Without any apparent further correspondence, in August of 2012, Sharona Properties, LLC filed a miscellaneous permit application to "construct a bill-board type electrical sign facing Rt. 480 [sic] for advertising of both on & off premise business, public service announcements, and political commentary."  (ECF #16-6, Ex. H; ECF #16-6, Sonenstein Depo. at 44).   The application does not appear to identify the property at issue, but lists Sharona Properties as the owner, with an address in Mayfield Heights, and lists Howard Sonenstein as the general contractor, at the same address.   (ECF # 16-6, Ex. H).  About five days later, Mr. Sonenstein provided a print out to the Village, identifying the 27049 Miles Rd. address and including a map indicating where the proposed billboard would be located.  (ECF #16-6, Ex. I).  The Village responded with a letter listing additional requirements that would be necessary before a permit review could be completed, including: (1) three sets of drawings, (2) three site location plans, (3) a $125.00 fee, and (4) a completed signed application.  (ECF # 16-6, Sonenstein Depo. at 71-72, Ex. 13).  Mr. Sonenstein indicated that he did not submit three sets of drawings, did not submit three site location plans, and has no idea whether he paid the $125.00 fee. (ECF #16-6, Sonenstein Depo. at 72-73).  He also stated that following the rejection of his application, he never sought a variance, never appealed the rejection, and never sought approval of a different type of sign.  (ECF #16-6, Sonenstein Depo. at 73-75).

Although there is no mention of it in the correspondence between Sharona Properties or Mr. Sonenstein and the Village, Mr. Sonenstein has testified that he hoped to construct a digital billboard that was about 14 ft. by 48 ft. with a single pole, because "cars traveling 80 miles an hour are not going to see a small 6-foot sign." (ECF #16-6, Sonenstein Depo. at 45-46; ECF #19-1, at 6).  Mr. Sonenstein also indicated that he had "not determined any singular purpose for the sign at issue" though he wanted one "capable of allowing" business, public service announcements and political commentary.  (ECF # 19-1, at 6).  Mr. Sonenstein has failed to

-3-

allege that his proposed billboard met all the uncontested requirements (procedural or size limitations) of the ordinance at issue, and described his alleged loss as a loss of potential income generated by, "among other things, selling advertisement (commercial, political, commentary, etc.) space to third parties." (ECF #19-1, at 8).

Mr. Sonenstein has not identified any speech he personally sought to express, nor has he alleged a lack of alternative venues for expressing any such speech. He was unable to identify any purpose of Sharona Investments, other than as a vehicle to hold title to certain properties.[2] He could not identify any reason for constructing a billboard on the property, and could not identify any specific message he hoped to convey, or any potential off-premises clients who might purchase the advertising space from him. (ECF #16-6, Sonenstein Depo. at 31-37, 50-51). He had a general idea that he would sell the space for advertising of on and off-premises businesses, campaign advertising, or public service announcements, but doesn't remember ever having a conversation with anyone who would potentially rent the space if the billboard was built. (ECF #16-6, Sonenstein Depo. at 55-57, 74, 79-80). If approved, he expected to sell the advertising space and to allow the Village to use the billboard to advertise or promote their activities or post other public service announcements. (ECF #16-6, Sonenstein Depo. at 99-100 ("I was going to make money. They were going to benefit by advertising, whether it's fasten your seatbelts or a missing child or leaf cleanup.")).

Although both parties agree that Sharona Properties' application for a sign permit was denied, there is no evidence as to how that denial was first communicated or what specific grounds were given for the denial. (ECF #16-4, Sonenstein Depo. at 69 ("I don't know if I got a notification saying it's denied or if I called or how – I knew – I did know from them somehow that, no, it's not going to happen. I don't know how I did it.")). The only evidence presented is a pre-application letter from the Village indicating that the ordinances "do not permit the usage

---

[2]Sharona Properties also has property in Chesterland, Mayfield Heights, Cleveland, and Richmond Heights. Sharona Properties, itself, is located in Mayfield Heights.

of billboards for off-premises sales," and a January 4, 2013 letter from the Village's Assistant Law Director indicating that after a review of all correspondence, the Village believes that the ordinances are, in fact, constitutional, and although the Village, itself, would not support it, Mr. Sonenstein could still apply for a variance. (ECF # 16-4, Ex. G, J).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal

issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp*., 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **DISCUSSION**

Chapter 1161 of the Village of Orange's local ordinances regulates the use and construction of signs within the Village limits. The chapter sets forth the purpose and intent of that chapter as promoting "the public health, safety and welfare by establishing standards and criteria for the construction, installation, maintenance and operation of signs." The chapter states that it is intended to:

(a) Protect property values.

(b) Promote clarity in sign communications while providing reasonable and appropriate opportunities to advertise goods and services and to identify

properties.

(c) Promote harmony between and among the physical characteristics of signs and the physical characteristics of surrounding land, structures, and the development features.

(d) Promote attractive and orderly appearance in all districts.

(e) Ensure that signs are located and designed to minimize sign clutter and the distractions and confusion that may be contributing factors int traffic congestion and accidents, and maintain a safe and orderly pedestrian and vehicular environment.

(f) Provide review procedures that assure that signs are consistent with Village objectives.

(g) Prohibit all signs not expressly permitted by this chapter.

Ord. 1161.01.

A "sign" is defined as "any visual communication display, object, device, graphic, structure or part, situated indoors or outdoors, or attached to, painted on, or displayed from a building or structure in order to direct or attract attention to, or announce or promote, an object, product, place, activity, person, ideology, institution, organization, business or the like, by means of letters, words, model, banners, flags, pennants, insignia, devices, designs, colors, symbols, fixtures, images, illuminations or representations uses as, or which is in the nature of, an announcement, direction, advertisement or other message." Ord. 1161.03(f).

A freestanding sign is defined as "any sign supported from the ground and not attached to any building." This includes single pole signs. Ord. 1161.03(s). Section 1161.06 permits freestanding signs in business districts that have a maximum area of 32.0 square feet and a maximum height of 8.0 feet.. Only one freestanding sign is permitted per property. Ord. 1161.06(a)(2)(I-iii). Although freestanding signs of the requisite size are generally allowed, off-premise signs (otherwise defined as "billboards") are explicitly prohibited. Ord. 1161.13(f). "Billboard or Off-premise Sign" is defined as "any sign structure advertising an establishment, merchandise, event, service, or entertainment that is not sold, produced, manufactured or furnished at the property on which the sign is located." Ord. 1161.03(b).

Plaintiffs argue that their application for a free-standing sign was denied because it fit the definition of a billboard or off-premise sign, and that the ordinance prohibiting such signs is unconstitutional both facially and as applied. Defendant contends that Plaintiff has no standing to challenge the prohibition against billboards and off-premise signs, and that the prohibition is constitutional, both facially and as applied.

A. Standing

Standing is a threshold matter that cannot be waived. *See Coastal Outdoor Advertising Group, LLC v. Township of East Hanover, New Jersey*, 630 F.Supp.2d 446, 450 (N.J. D.C. 2009), aff'd 397 Fed. Appx. 794 (3rd Cir. 2010). In order to establish standing to assert an actual "case or controversy"Article III of the U.S. Constitution requires a Plaintiff to demonstrate

(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjecture or hypothetical;

(2) a causal connection between the injury and the conduct; and

(3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Generally, a party may only assert its own rights and cannot raise claims on behalf of other potentially affected parties. *See Secretary of State of Md. V. Joseph H. Munson Co., Inc*. 467 U.S. 947, 955, 81 L. Ed. 2d 786, 104 S. Ct. 2839 (1984).

When a plaintiff raises a facial claim against a law that potentially restricts free speech, there may be an exception to the ordinary standing requirements. Under these circumstances a plaintiff has standing to raise the claim if they can demonstrate that "every application of the [law] create[s] an impermissible risk of suppression of ideas" or that it is so substantially overbroad that it "may inhibit the constitutionally protected speech of third parties" even if it may be validly applied to the plaintiffs themselves. *See N.Y. State Club Ass'n v. City of New*

*York*, 487 U.S. 1, 14-15, 101 L. Ed. 2d 1, 108 S. Ct. 2255 (1988). In this case, Plaintiffs have raised both facial and "as applied" challenges to the Village of Orange's sign ordinance.

Regarding the "as applied" challenge, Plaintiffs must satisfy the general Article III standing requirements. Defendants contend that Plaintiffs have not satisfied the redressability factor and therefore have not established standing to pursue this action. The Sixth Circuit, among others, has held that a plaintiff lacks standing to challenge a city's off-premise or billboard ban if their proposed sign would still violate a city's size, height, or other valid restrictions. *See, e.g., Midwest Media Property, LLC v. Symmes Twp., Ohio*, 503 F.3d 456, 461 (6th Cir. 2007)("Even if plaintiffs could show that the township's original off-premise advertising ban (or its sign approval process) violated the First Amendment, each of Midwest Media's nine sign applications sought permission to post signs that plainly violated the township's size and height regulations."); *Prime Media, Inc. V. City of Brentwood*, 398 F.3d 814 (6th Cir. 2005)(stating that an advertising company was not injured by an off-premise ban because all proposed signs violated valid height and size restrictions).

In this case, Plaintiffs' application could have been validly denied for several reasons that are completely independent of the ban on billboards and off-premise signs. First, Plaintiffs did not comply with the application requirements. Mr. Sonenstein admitted that the Village required (1) three sets of drawings, (2) three site location plans, (3) a $125.00 fee, and (4) a completed signed application, as part of the application process. (ECF # 16-6, Sonenstein Depo. at 71-72, Ex. 13). Mr. Sonenstein also admitted that he did not submit drawings, did not submit site location plans, and has no idea whether he paid the $125.00 fee. (ECF #16-6, Sonenstein Depo. at 72-73).[3] Further, although a signed application was submitted, it did not identify the subject

---

[3] The failure to file a complete application packet could also bar the "as applied" portion of this litigation under the ripeness doctrine, as Plaintiffs did not submit a fully developed application that would allow for a final judgment on the merits of their request. Further, Mr. Sonenstein's failure to appeal the decision or seek a variance, although the Village verified that this was an available option, would lead the Court to question whether this case is ripe for review. When the ordinances provide a means to clarify the record and more specifically

property. When a map of the property was eventually submitted, it did not provide any measurement indicating planned setbacks, sign dimensions, height of the proposed sign, or other information that would allow the Planning and Zoning Commission and the Architectural Board of Review to determine whether the proposed sign would comply with Village requirements. Without this information, the Village could not possibly approve the application even if off-premise signs were permitted.

In his deposition, Mr. Sonenstein described the sign he hoped to build as a digital billboard that would be about 14 feet by 48 feet with a single pole, because "cars traveling 80 miles an hour are not going to see a small 6-foot sign." (ECF #16-6, Sonenstein Depo. at 45-46; ECF #19-1, at 6). The area of such a sign would be 672 square feet. These dimensions dwarf the allowed maximum area (32.0 square feet) and maximum height (8.0 feet) for freestanding signs, as allowed under the Village ordinances.[4] Therefore, even if the prohibition on off-premise signs and billboards were deemed to be unconstitutional, Plaintiffs proposed sign would be prohibited. To the extent that Plaintiffs argue that the size of the sign was not yet determined, the filing of the application, and the filing of this lawsuit were premature. There can be no concrete, particularized, actual or imminent injury if Plaintiffs had no concrete, particular plans to actually build a sign that comported, at least, with the unchallenged restrictions within the Village ordinances.

Further, it is undisputed that the property at issue in this case already has one freestanding sign in place near the garden center which leases the front of the property. The

---

identify what relief is sought through the submission of drawings and plans, and/or when it provides a means by which an exception or variance may be considered upon disapproval of a permit request, the Sixth Circuit has recognized that the ripeness of the action may be called into question. *See Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533 (6th Cir. 2010); *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 617 (6th Cir. 2008).

[4]The size restrictions contained in the ordinances have not been challenged and are presumed valid.

Village ordinances limit each property to one freestanding sign.[5] Therefore, Plaintiff's application for a freestanding sign was properly denied regardless of the propriety of the ban on off-premise signs and billboards, and regardless of its proposed size. Again Plaintiffs argue that it is possible they might have gotten rid of the first sign if the permit had been granted for the larger billboard. This, however, is nothing more than speculation and does not establish standing through the establishment of a concrete, particularized, imminent injury. Further, the Village must consider the permit application as it is presented and there was no mention in the application of any plan to remove the current freestanding sign to allow for the proposed billboard. For these reasons, the Court finds that Plaintiffs lack standing to bring their claim alleging that the Village's prohibition on billboards and off-premise signs is unconstitutional as it was applied to them.

Nonetheless, because the standing requirements are somewhat relaxed on claims that a government restriction violates the First Amendment, the Court will address the facial challenge to the constitutionality of the Village's prohibition on billboards and off-premise signs. Plaintiffs have not alleged that every application of the [law] create[s] an impermissible risk of suppression of ideas" as the U.S. Supreme Court has clearly held that a blanket ban on billboards is acceptable under the First Amendment, and both parties appear to agree that prohibitions against off-premise commercial speech may be validly applied. The Complaint, however, fairly raises a claim that the Village's ordinance banning billboards and off-premise signs, as they have defined them, is so substantially overbroad that it "may inhibit the constitutionally protected speech of third parties. Therefore, the Court will address the constitutionality of that specific ban below.

B. Constitutionality

Plaintiffs assert that the issue in this case is whether the Village may constitutionally ban non-commercial speech within the Village. They contend that, when read properly, the Village

---

[5] This restriction has not been challenged, and is, therefore, presumed to be valid.

ordinances prohibit all non-commercial speech, whether on or off-premise, and that this impermissibly interferes with a property owner's First Amendment rights. There is nothing contained in the Village ordinances that would support this contention. At issue in this case is a Village ordinance that bans "any sign structure advertising an establishment, merchandise, event, service, or entertainment that is not sold, produced, manufactured or furnished at the property on which the sign is located." This language, on its face, does not operate to ban non-commercial, ideological or political speech. Further, there is nothing within the ordinance that could be read as limiting the content of any permissible sign to the communication of commercial speech. In fact, the term "sign," as used to define a permitted means of communication, specifically includes not only traditionally commercial speech, but also visual communications aimed at the promotion or announcement of any activity, ideology, institution or the like "which is in the nature of, an announcement, direction, advertisement" or, broadly, any "other message."

In short, there is nothing in the language of the ordinances at issue that would suggest the Village has intended to ban signs expressing non-commercial speech. Further, there has been no evidence that anyone has ever been denied a permit for a size compliant sign based on its content, or that anyone has ever been barred from erecting a sign to communicate non-commercial messages. Therefore, there is absolutely no evidence to suggest, let alone prove, that the Village ordinances impose a complete bar, any content-based restriction, or any other non-permissible limitation on non-commercial speech.

Defendants, in contrast, have framed the issue as whether they are permitted to impose a blanket ban on all billboards or off-premise signs, regardless of content. They contend that their ordinance is content neutral because it regulates the secondary effects of off-premise signs without regard to content. However, the Village's definition of "off-premise sign" or "billboard" does, to some degree, look to the content of the message when defining which signs are prohibited. Under the ordinance, an "off-premise sign" is synonymous with the term "billboard," and both are defined as structures "advertising an establishment, merchandise,

event, service, or entertainment that is not sold, produced, manufactured or furnished at the property on which the sign is located." By definition then, the prohibition against billboards/off-premise signs applies only to those signs that communicate commercial speech or advertising that is unrelated to any business or service existing on the premises.

We are left, therefore, with a regulating scheme that is content neutral in so far as it allows signs communicating both commercial and non-commercial speech to exist on a property so long as they meet certain size and number limitations.[6] However, the regulations do take content into account in so far as they prohibit only off-premise commercial speech.

The appropriate standard for analysis in this case, therefore, is not the strict scrutiny test applicable to restrictions place on the fundamental right to engage in non-commercial speech as asserted by Plaintiffs. The United States Supreme Court has long recognized that the United States Constitution affords less protection to commercial speech than to other varieties of guaranteed expression, because it is perceived to have less value and does not rise to the stature of a fundamental right. *See, e.g., Metromedia, Inc. V. City of San Diego,* 453 U.S. 490, 506 (*1981), Central Hudson Gas & Electric Corp. V. Public Service Commission of New York*, 447 U.S. 557, 562, 100 S.Ct. 2343, 2349-50 (1980); *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 455-457, 98 S. Ct. 1912, 1918 (1978). Nor do we need to address the content neutrality requirement set forth in the general test for acceptable time, place and manner restrictions as asserted by the Defendant.

Commercial speech is protected by the First Amendment so long as it concerns lawful activity and is not misleading. That protection, however, is limited and restrictions will be tolerated if they (1) directly advance a substantial state interest, and (2) are not more extensive than necessary to serve that interest. *Central Hudson*, 447 U.S. at 565-566. Regulations affecting commercial speech need not use the least restrictive means necessary to accomplish the

---

[6]There is no dispute that the Village is well within its rights to limit the size and number of signs that may be placed on a property within its borders.

state's goal, but rather the ends and means should be reasonably related. *See, City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.3 (1993).

As both parties have pointed out in their briefing, the most informative case on this topic is the U.S. Supreme Court's decision in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981). Further, as both parties have acknowledged, the *Metromedia* court found that a ban on commercial speech that relates solely to off-premise goods and services meets the constitutional requirements of *Central Hudson*. In coming to this conclusion, the *Metromedia* court relied in part on a previous U.S. Supreme Court case, *Suffolk Outdoor Advertising Co. V. Hulse*, 439 U.S. 808 (1978), which contained a regulation that is nearly identical to the ordinance at issue in this case.

The regulation in Suffolk banned signs "which direct attention to a business, commodity, service, entertainment, or attraction sold, offered or existing elsewhere than upon the same lot where such a sign is displayed." *Metromedia* at 499. As in this case, that ordinance did not, on its face, prohibit non-commercial speech. The court, therefore, summarily rejected the notion that the prohibition of offsite commercial advertising violates the First Amendment. *Suffolk, 439 U.S. 808; see also, Metromedia* at 498.

*Metromedia*, explained the Central Hudson factors in the context of a ban on off-premise billboards, and easily found that such bans are constitutional when applied to commercial speech. As in *Metromedia*, there is no dispute that the banned commercial speech in this case would relate to unlawful activities or that it would be misleading. Further, there can be no real dispute that the goals of the ordinance, as expressed in Ord. 1161.01 (e.g., ensuring traffic safety and preserving the appearance and protecting the property values of Village properties) are substantial governmental interests. See, e.g., *Metromedia* at 507, *Railway Express Agency, Inc. v. New York*, 336 U.S. 106 (1949); *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).

Plaintiffs do not contend that the prohibition on off-premise signs, as defined in the

-14-

ordinance is overbroad, nor would such a contention withstand legal scrutiny. As stated by the *Metromedia* court: "If the city has a sufficient basis for believing that billboards [signs] are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." *Metromedia* at 507-508. The fact that not all commercial advertising signs are barred only supports the view that the ordinance is no broader than necessary to accomplish the goal, as the "city has gone no further than necessary in seeking to meet its ends. Indeed it has stopped short of fully accomplishing its ends: It has not prohibited all billboards [signs], but allows onsite advertising..." *Metromedia* at 508.

The only question remaining under the *Central Hudson* test is whether the ordinance "directly advances" the governmental interest. The United States Supreme Court has taken the stance in multiple cases that a legislative determination that an ordinance will serve to advance the stated purpose and intent will not be second guessed absent evidence that the conclusion is patently false or unreasonable. *See, e.g., Metromedia* at 509*; Railway Express Agency, Inc. v. New York*, 336, U.S. 106, 109 (1949). Even if the ordinance may be under-inclusive with regard to the issues of traffic safety and aesthetics by allowing some (on-premise) commercial speech, this does not diminish the fact that banning some billboards or off-premise signs directly advances the goal and improves the situation in these regards. *See, Metromedia* at 510-512. After applying the *Central Hudson* test, the *Metromedia* court made it crystal clear that a municipality may prohibit off-premise commercial signs without running afoul of the First Amendment.

As the Village ordinance, on its face, prohibits only off-premise commercial signs, and has no facial prohibition against non-commercial speech, the ordinance at issue does not violate the First Amendment as written. Further, as the Plaintiff in this case has no standing to challenge the ordinance "as applied," the Defendant's Motion for Summary Judgment (ECF #15) should be GRANTED.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF #15) is GRANTED, and Plaintiff's Motion for Summary Judgment (ECF #18) is DENIED. Judgment is entered in favor of the Defendants and this case is terminated.
IT IS SO ORDERED.


　　　　　　　　　　　　　　　　　　　　/s/ Donald C. Nugent
　　　　　　　　　　　　　　　　　　　Donald C. Nugent
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE


Date:  February 20, 2015